IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-00101-D

| | |
|---|---|
| RONALD DRAUGHON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| WILBURT SMITH d/b/a SOUTHERN ) | |
| TECHNOLOGY PROFESSIONAL ) | |
| CONSULTING SERVICES, ) | |
| ) | |
| Defendants. ) | |

On April 16, 2021, Ronald Draughon ("Draughon" or "plaintiff") filed a lawsuit in Sampson County Superior Court against Wilburt Smith ("Smith") and Southern Technology Professional Consulting Services LLC ("Southern Tech") (collectively "defendants") alleging (1) breach of Draughon's employment contract, (2) fraudulent inducement to enter into a contract, and (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1 et seq. [D.E. 4-1]. On June 2, 2021, defendants simultaneously removed the lawsuit to federal court based on diversity jurisdiction [D.E. 4] and filed their answer to Draughon's complaint [D.E. 3]. Defendants also moved to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6) [D.E. 1] and filed a memorandum in support [D.E. 2]. On September 1, 2021, Draughon responded in opposition to defendants' motion [D.E. 20]. On September 7, 2021, defendants replied [D.E. 21]. As explained below, the court grants defendants' motion to dismiss.

I.

Draughon is North Carolina citizen who resides in Sampson County, North Carolina, and has an office in and principally works out of Harnett County, North Carolina. See Compl. [D.E. 4-1]

¶ 1. Smith is a Georgia resident who owns Southern Tech. See id. ¶ 2. Southern Tech is incorporated in Georgia where it has its principal place of business. See id. The company contracts "with the U.S. Government to provide services to military bases around" the country. Id. ¶ 3. Southern Tech is licensed to do business in North Carolina and provides services at Fort Bragg in Cumberland County, North Carolina. See id. ¶ 3. At Fort Bragg, Southern Tech provides waste removal services pursuant to a contract with the United States Army. See id. ¶¶ 3, 5, 10–11. Draughon helped Smith and Southern Tech prepare and submit their winning bid for the contract. See id. ¶¶ 3, 7. After winning the contract, defendants hired Draughon as the project manager in charge of the Fort Bragg contract. See id. ¶ 11.

On December 31, 2019, Smith gave Draughon and two co-workers a resume for a potential employee Draughon and his co-workers were to interview that afternoon. See id. ¶ 15. Before the interview, Draughon called the job candidate's current employer "to do a background check." Id. When Smith learned Draughon had conducted the background check, Smith became angry and sent Draughon home. See id. Approximately one week later, Smith fired Draughon for having conducted the background check without permission in violation of company policy. See id. ¶¶ 15, 22; see also [D.E. 3-4]. Draughon maintains that conducting the background check was within his job description, but defendants contend that it was the exclusive responsibility of the human resources department. See Compl. ¶ 15; Answer [D.E. 3] ¶ 15.

Draughon alleges that during his employment, he always acted in good faith toward defendants. See Compl. ¶¶ 12, 19. However, Draughon alleges that Smith treated him poorly and treated him differently than Smith treated other employees. See id. ¶¶ 16–18, 20–21.

On April 16, 2021, Draughon sued defendants for (1) breach of Draughon's employment contract, (2) fraudulent inducement to enter into a contract, and (3) a UDTPA violation. See id. ¶¶

2

23–38. Draughon seeks monetary relief. See id. at 9–10.[1] Upon removing the case to federal court, Defendants moved to dismiss for failure to state a claim under Rules 9(b) and 12(b)(6). See [D.E. 1]. Draughon opposes the motion. See [D.E. 20].

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a party's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,

---

[1] Defendants contend Draughon has alleged claims seeking more than $75,000 in damages, justifying this court's exercise of diversity jurisdiction under 28 U.S.C. § 1332. See [D.E. 4] ¶¶ 14–16. Draughon has not challenged defendants' contention, and the court agrees with defendants. See Compl. at 9–10.

3

637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quotations omitted); see Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 553 (4th Cir. 2019). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." Harrison, 176 F.3d at 783 n.5. Nonetheless, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Edmonson, 922 F.3d at 553 (quotation omitted); see Harrsion, 176 F.3d at 784.

This court has subject-matter jurisdiction based on diversity. See 28 U.S.C. § 1332. Thus, the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002).

4

In resolving the dispute, this court applies North Carolina substantive law. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from the Supreme Court of North Carolina, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

III.

Defendants argue the court should dismiss Draughon's claims under Rules 9(b) and 12(b)(6). Defendants argue that Draughon fails to state a claim for breach of an at-will employment contract and that Draughon's pleadings for his fraud in the inducement and UDTPA claims fail for lack of

---

[2] North Carolina has no mechanism for certifying questions of state law to the Supreme Court of North Carolina. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

5

specificity and fail to state a claim. See [D.E. 2] 1.

A.

Defendants argue Draughon's breach of contract claim fails because North Carolina does not recognize a cause of action "for a bad-faith discharge of an employee at will." [D.E. 2] 4–5. Draughon responds that a cause of action exists when the employment agreement is written. See [D.E. 20] 1–2. Draughon argues that the parties had a valid written employment agreement, that it was not an at-will contract, and because it was not an at-will contract, defendants wrongly fired him. See id. at 2–4.

Under North Carolina law, interpreting a written contract is a question of law for the court. See Briggs v. Am. & Efird Mills, Inc., 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960); Brown v. Between Dandelions, Inc., 273 N.C. App. 408, 410, 849 S.E.2d 67, 70 (2020); GE Betz, Inc. v. Conrad, 231 N.C. App. 214, 225, 752 S.E.2d 634, 644 (2013). "[T]he court may not ignore or delete any of [the contract's] provisions, nor insert words into it, but must construe the contract as written, in light of the undisputed evidence as to the custom, usage, and meaning of its terms." Martin v. Martin, 26 N.C. App. 506, 508, 216 S.E.2d 456, 457–58 (1975); see T.M.C.S., Inc. v. Marco Contractors, Inc., 244 N.C. App. 330, 342, 780 S.E.2d 588, 597 (2015). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." Hemric v. Groce, 169 N.C. App. 69, 76, 609 S.E.2d 276, 282 (2005) (quotations omitted); see Potter v. Hilemn Lab'ys, Inc., 150 N.C. App. 326, 331, 564 S.E.2d 259, 263 (2002); Bicket v. McLean Secs., Inc., 124 N.C. App. 548, 552, 478 S.E.2d 518, 521 (1996).

"North Carolina is an employment-at-will state." Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). Unless the contract specifies "a definite term of employment, the relationship is presumed to be terminable at the will of either party without

6

regard to the quality of performance of either party." Id., 493 S.E.2d at 422; see Soles v. City of Raleigh Civil Serv. Comm'n, 345 N.C. 443, 446, 480 S.E.2d 685, 687 (1997). Thus, an employer generally may terminate an at-will employee for any legal, nondiscriminatory reason. See Garner v. Rentenbach Constructors Inc., 350 N.C. 567, 568–72, 515 S.E.2d 438, 439–41 (1999); Kurtzman, 347 N.C. at 331, 493 S.E.2d at 422; Gillis v. Montgomery Cnty. Sheriff's Dep't, 191 N.C. App. 377, 379–80, 663 S.E.2d 447, 449–50 (2008).

North Carolina recognizes a narrow exception to that general rule if an employee's termination violates North Carolina public policy. See, e.g., Whitt v. Harris Teeter, Inc., 359 N.C. 625, 625, 614 S.E.2d 531, 532 (2005) (per curiam) (adopting dissenting opinion at 165 N.C. App. 32, 43–50, 598 S.E.2d 151, 159–63 (2004) (McCullough, J., dissenting)); Garner, 350 N.C. at 568–72, 515 S.E.2d at 439–41; Amos v. Oakdale Knitting Co., 331 N.C. 348, 350–54, 416 S.E.2d 166, 168–70 (1992); Coman v. Thomas Mfg. Co., 325 N.C. 172, 176–78, 381 S.E.2d 445, 447–49 (1989). To prove a claim of wrongful discharge in violation of North Carolina public policy, a plaintiff must identify and rely upon a specific North Carolina statute or North Carolina constitutional provision stating North Carolina's public policy. See Garner, 350 N.C. at 568–72, 515 S.E.2d at 439–41; Amos, 331 N.C. at 350–54, 416 S.E.2d at 168–70; Coman, 325 N.C. at 176, 381 S.E.2d at 447; Horne v. Cumberland Cnty. Hosp. Sys., Inc., 228 N.C. App. 142, 146, 746 S.E.2d 13, 18 (2013) ("[T]he plaintiff must allege specific conduct by a defendant that violated a specific expression of North Carolina public policy." (quotation omitted) (emphasis in original)); Gillis, 191 N.C. App. at 379–81, 663 S.E.2d at 449–50; Whitings v. Wolfson Casing Corp., 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005) ("The public policy exception . . . is confined to the express statements contained within our General Statutes or our Constitution."); Considine v. Compass Grp.

7

USA, Inc., 145 N.C. App. 314, 321, 551 S.E.2d 179, 184 (2001), aff'd, 354 N.C. 568, 557 S.E.2d 528 (2001) (per curiam).

Draughon has not plausibly alleged a valid breach of contract claim. Draughon's employment contract with defendants specifies a starting date of May 27, 2019. See [D.E. 4-1] 13. The contract does not state an end date or a definite term of employment. Cf. id. at 13–14. Thus, under the contract's plain language, the court presumes Draughon was an at-will employee.

In opposition to this conclusion, Draughon argues defendants hired him for a definite period because defendants hired Draughon to manage the waste-removal contract at Fort Bragg, which apparently is set to end in 4.5 years. See [D.E. 20] 4. Draughon's employment contract, however, does not mention the Fort Bragg contract, and neither the complaint nor the employment contract specify that the Fort Bragg contract ends in 4.5 years. See Compl.; [D.E. 4-1] 13–14. Accordingly, nothing in the employment contract suggests defendants hired Draughon for the duration of the Fort Bragg contract. And even if the employment contract did mention the Fort Bragg contract, hiring Draughon to manage a specific contract, without more, does not show that defendants hired him for the duration of the Fort Bragg contract.

To the extent Draughon argues that the contract contains an implied definite end date or asks the court to vary the terms of the contract by reading in a definite end date, the parol evidence rule dooms Draughon's arguments. A party cannot use parol evidence to "vary, add to, or contradict a written instrument" intended to be a final integration of a transaction. Van Harris Realty, Inc. v. Coffey, 41 N.C. App. 112, 115, 254 S.E.2d 184, 186 (1979); see Hoots v. Calaway, 282 N.C. 477, 486, 193 S.E.2d 709, 715 (1973); Lassiter v. Bank of N.C., 146 N.C. App. 264, 269, 551 S.E.2d 920, 923 (2001); Hall v. Hotel L'Europe, Inc., 69 N.C. App. 664, 666, 318 S.E.2d 99, 101 (1984). "Any or all parts of a transaction prior to or contemporaneous with a writing intended to record them

8

finally are superseded and made legally ineffective by the writing." Van Harris Realty, 41 N.C. App. at 115, 254 S.E.2d at 186 (quotation omitted); see Thompson v. First Citizens Bank & Tr. Co., 151 N.C. App. 704, 708–09, 567 S.E.2d 184, 188 (2002); Harrell v. First Union Nat'l Bank, 76 N.C. App. 666, 667, 334 S.E.2d 109, 110 (1985), aff'd, 316 N.C. 191, 340 S.E.2d 111 (1986). To be sure, a court may consider parol evidence when an employment contract does not specify a definite term of employment but the parties have stipulated to the existence of "[o]ther significant and essential terms." Hall, 69 N.C. App. at 666, 318 S.E.2d at 101. But here, the parties have not stipulated to the presence of parol terms and Draughon has not plausibly alleged that "[t]he employment contract in question here was partly written, and partly parol in nature." Id.; see Compl. ¶ 11 (alleging the parties "entered into a written contract" and incorporating it by reference as an exhibit).

A court also may appropriately consider parol evidence of fraud. The court "assume[s] the parties signed the instrument they intended to sign, . . . absent evidence or proof of mental incapacity, mutual mistake of the parties, undue influence, or fraud." Thompson, 151 N.C. App. at 709, 567 S.E.2d at 188 (quotation and alterations omitted); see N.C. State Bar v. Merrell, 243 N.C. App. 356, 371, 777 S.E.2d 103, 114 (2015); Drake v. Hance, 195 N.C. App. 588, 591, 673 S.E.2d 411, 413 (2009). Although Draughon alleges fraud, he does not allege fraud related to the length of his employment. Cf. Compl. ¶¶ 28–34. Accordingly, Draughon's fraud allegations do not fit within this exception.

A court may also consider parol evidence to explain an ambiguous term in the contract. See Drake, 195 N.C. App. at 591, 673 S.E.2d at 413; Crider v. Jones Island Club, Inc., 147 N.C. App. 262, 266–67, 554 S.E.2d 863, 866–67 (2001); Vestal v. Vestal, 49 N.C. App. 263, 266–67, 271 S.E.2d 306, 309 (1980). Here, Draughon's employment contract does not specify an end date or reference the length of Draughon's employment. Cf. [D.E. 4] 13–14. Instead, the contract

9

unambiguously specifies a starting date and nothing more. Cf. id. Thus, Draughon's arguments are not an attempt to interpret an ambiguous term in the contract but rather an attempt to add a definite end date or length of employment to the contract, which Draughon may not do. See Van Harris Realty, 41 N.C. App. at 115, 254 S.E.2d at 186.

Draughon received notices of poor work performance before defendants fired him that bolster the court's conclusion that Draughon was an at-will employee. Draughon signed the first notice outlining his poor work performance and refused to sign the second. See [D.E. 3-2, 3-3]. Both notices state in bold, underlined text written in all capital letters: "I understand and acknowledge that the status of my employment with Southern Tech is at all times at-will and of indefinite duration. I understand this means that either I or Southern Tech may terminate the employment relationship at any time, with or without notice, for any legal reason or for no reason." [D.E. 3-2] (emphasis omitted); see [D.E. 3-3]. Not only was Draughon an at-will employee, but he acknowledged that fact when he signed the first notice.

Draughon was an at-will employee. His employment contract with defendants contained no definite term of employment, and Draughon has not plausibly alleged that a public-policy exception to the at-will-employment presumption applies. Cf. Compl.; [D.E. 20] 1–5. Defendants could fire Draughon for any reason that did not violate a federal or state anti-discrimination statute or North Carolina public policy, and they did. See Compl. ¶ 15; cf. Considine, 145 N.C. App. at 317, 551 S.E.2d at 181 (stating "[t]he discharge of an employee at will generally does not support an action for wrongful discharge in" North Carolina). Accordingly, Draughon has not plausibly alleged a valid breach of contract claim, and the court dismisses Draughon's breach of contract claim.

10

B.

Defendants argue that Draughon's fraud in the inducement claim fails because it lacks the specificity required by Rule 9(b) and fails to state a claim under Rule 12(b)(6). See [D.E. 2] 5–13. Draughon responds that the facts alleged in his complaint, taken as a whole, plausibly allege fraud in the inducement with sufficient particularity. See [D.E. 20] 5–8. Specifically, Draughon alleges that defendants' "actions, statements, and conduct" demonstrate that defendants hired Draughon to help them secure the Fort Bragg contract but that they "had no initial intentions of keeping [Draughon] on as they led him to believe, both orally and in the contract." Compl. ¶ 14. Draughon alleges defendants used him as a "'pawn' to obtain his services and expertise to submit the bid." Id. Smith allegedly "made numerous comments and promises" to Draughon that he "was vital and necessary . . . to the beginning and operation of the Ft. Bragg contract." Id. ¶ 29. Smith's comments "were material to convince" Draughon to work for defendants. Id. ¶¶ 30, 33. However, "the representations and statements . . . were false, deceitful, and misleading" because defendants intended to fire Draughon as soon as he helped defendants secure the Fort Bragg contract. Id. ¶¶ 31–32.

To demonstrate fraud, Draughon must plausibly allege: "(1) the defendant's false representation of a past or existing fact, (2) defendant's knowledge that the representation was false when made or it was made recklessly without any knowledge of its truth and as a positive assertion, (3) defendant made the false representation with the intent it be relied on by the plaintiff, and (4) the plaintiff was injured by reasonably relying on the false representation." Britt v. Britt, 320 N.C. 573, 579, 359 S.E.2d 467, 471 (1987), overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 374 S.E.2d 385 (1988); see Great American Emu Co. v. E.J. McKernan Co., 509 F. Supp. 3d 528, 538–39 (E.D.N.C. 2020). "Evidence of a promise which is not

11

fulfilled is not sufficient to support a finding of a false representation unless the evidence shows the promisor made the promise with no intention of fulfilling it." Britt, 320 N.C. at 579, 359 S.E.2d at 471. "Mere proof of nonperformance is not sufficient to establish the necessary fraudulent intent." Id. at 580, 359 S.E.2d at 471.

Draughon's complaint fails to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), because Draughon does not allege "the time, place, and contents of the false representations." Harrison, 176 F.3d at 784. At most, Draughon has made a threadbare recital of the elements of a fraud claim. Cf. Iqbal, 556 U.S. at 663. Draughon alleges defendants knowingly made false representations to him to induce him to work for defendants, and Draughon relied on those representations to his detriment. However, the complaint does not allege with any particularity where and when Smith made the misrepresentations. Other than Smith's comments that Draughon would be a "vital" member of the team, Draughon does not allege the content of Smith's comments or why Smith's comments were material to Draughon's decision to work for defendants. Compl. ¶¶ 1–22, 28–34. Furthermore, Draughon's allegations are sufficiently vague that the court is not satisfied "that the defendant[s] ha[ve] been made aware of the particular circumstances for which [they] will have to prepare a defense at trial." Edmonson, 922 F.3d at 553 (quotation omitted). Thus, Draughon's claims do not satisfy Rule 9(b)'s pleading requirements, and the court treats this failure "as a failure to state a claim under Rule 12(b)(6)." Harrison, 176 F.3d at 783 n.5.

Alternatively, even if Draughon's complaint satisfied Rule 9(b), Draughon has failed to plausibly allege fraud under Rule 12(b)(6). Draughon has not plausibly alleged that defendants knowingly or recklessly made false representations to him of past or existing facts. Draughon alleged that even though defendants provide services to military bases across the country, defendants lacked the necessary expertise to successfully bid on the specific waste-removal contract at Fort

12

Bragg. See Compl. ¶¶ 3, 6–7; [D.E. 20] 6 (arguing defendants "had no clue of what it would take to tackle this contract venture"). Because Draughon had worked on a waste-removal contract and knew how to successfully bid on a such a contract, Draughon alleges that defendants needed his help to win the contract and told him so. See Compl. ¶¶ 7, 29; [D.E. 20] 3, 6. Furthermore, Draughon alleges that defendants represented that he was "vital and necessary . . . to [the] beginning and operation of the Ft. Bragg contract." Compl. ¶ 29. Taking these allegations as true, Draughon alleges that defendants truthfully told him they needed Draughon's services because defendants could not obtain the Forth Bragg contract without Draughon's help. Truth telling, however, is far from a false representation of past or existing facts.

Even if the representations were true, Draughon alleges defendants made the representations fraudulently because defendants' "real intent was to obtain the Ft. Bragg contract" with Draughon's help and then fire him. Compl. ¶¶ 31–32. That allegation is not plausible. Defendants paid Draughon $1,000 to help prepare defendants' bid, which was due on January 31, 2019. See [D.E. 3] ¶¶ 2, 10; [D.E. 3-1]. Defendants did not hire Draughon as the project manager until June 4, 2019, over a week after the Fort Bragg contract went into effect on May 24, 2019. See [D.E. 3-1]; [D.E. 4-1] 13. If defendants' were trying to secure the contract and then fire Draughon, defendants could have paid Draughon the $1,000 for his bid-preparation services and then declined to hire him as the project manager.

In response, Draughon suggests that because he had the necessary experience with similar contracts, defendants needed Draughon's name on the bid in order to win the bid. See [D.E. 20] 2–3. According to Draughon, to comply with the Fort Bragg contract, defendants had to hire Draughon as the project manager once the contract went into effect even if defendants intended to fire him later. See id. The court rejects Draughon's argument because Draughon has not plausibly alleged

13

the facts needed to support it. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. Notably, the complaint does not allege that the bid listed Draughon as the project manager (or listed him at all), and neither party has submitted a copy of the bid for the court to review. The complaint also does not allege that defendants had no other qualified person they could list as the project manager. Even assuming the bid listed Draughon as the project manager, the complaint does not allege that the Fort Bragg contract required defendants to hire the person named in the bid as the project manager or barred defendants from replacing the project manager before the start of the contract. And although Draughon argues that defendants needed to list him on the bid because Draughon's credentials were superior to defendants' credentials, see [D.E. 20] 2–3, the complaint provides no comparison of the parties' credentials except vague allegations that Draughon had a good reputation for his work at Fort Bragg and defendants lacked the experience to win the Fort Bragg contract. See, e.g., Compl. ¶¶ 6–7.

Draughon also has not plausibly alleged he was injured by detrimentally relying on defendants' alleged misrepresentations. After all, relying on defendants' alleged statements, Draughon obtained gainful at-will employment. Draughon's reliance secured him a senior managerial position paying more than $85,000 annually, a $5,000 signing bonus, healthcare benefits,[3] a retirement plan, and the possibility of an annual bonus based on good performance equal to 20 percent of his annual salary. See [D.E. 4-1] 13. Gainful at-will employment is not a compensable injury.

In opposition, Draughon argues he suffered injuries when defendants fired him, not when they hired him. See Compl. ¶¶ 22, 27, 34, 38. As explained, Draughon was an at-will employee and

---

[3] That Draughon declined to participate in the healthcare plan does not negate that Southern Tech offered it to him as a benefit of his employment. See [D.E. 4-1] 13.

14

has no cause of action based on defendants firing him. Setting that aside for the sake of argument, any injury Draughon suffered when defendants fired him is not due defendants' alleged misrepresentations. Draughon relied on defendants' statements when he decided to accept defendant's offer of employment. Losing employment was connected not to defendant's alleged misrepresentations but to Draughon's poor work performance. Before defendants fired Draughon, defendants already had cited Draughon for lack of preparation, poor project management, lack of attention to detail, and insubordinate conduct in violation of company policies. See [D.E. 3-2, 3-3].[4] Draughon conducting an unauthorized background check was the last straw that ultimately resulted in defendants firing Draughon. Thus, Draughon's work performance, not defendant's alleged misrepresentations, caused Draughon's unemployment and any resulting injuries. Accordingly, Draughon does not plausibly allege that he suffered injuries in reliance on defendants' alleged misrepresentations.

Draughon has failed to plead his fraud claim with sufficient particularity under Rule 9(b) and has failed to state a fraud claim under Rule 12(b)(6). Thus, the court dismisses the claim.

C.

Defendants argue that Draughon's UDTPA claim fails under Rules 9(b) and 12(b)(6). Draughon's UDTPA claim arises from the same facts as his breach of contract and fraud in the inducement claims. Specifically, Draughon alleges that the parties' "preliminary contractual negotiations, and lack of proper performance" constituted unfair and deceptive trade practices. Compl. ¶¶ 35–38.

---

[4] The court recognizes that Draughon disputes the merits of these citations. See Compl. ¶ 18; [D.E. 3-2, 3-3]. The dispute is irrelevant. Even if Draughon is correct, nothing changes because defendants still fired Draughon for conducting an unauthorized background check, which is unconnected to defendants' alleged misrepresentations.

15

An action for unfair or deceptive trade practices is distinct from a breach of contract claim. Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61–62, 418 S.E.2d 694, 700 (1992). Even an intentional breach of contract, standing alone, will not suffice as a UDTPA claim. See id., 418 S.E.2d at 700. However, conduct constituting an unfair or deceptive trade practice under the UDTPA, even arising from a contractual relationship, is actionable. See, e.g., Sampson-Bladen Oil Co. v. Walters, 86 N.C. App. 173, 175–77, 356 S.E.2d 805, 807–09 (1987). UDTPA claims require a plaintiff to prove: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007) (quotation omitted). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." Id. at 72, 653 S.E.2d at 399 (cleaned up). "[I]t is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Gress v. Rowboat Co., Inc., 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (alteration and quotation omitted); see Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981). Whether an act or practice is unfair or deceptive is a question of law for the court. See, e.g., Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).

To the extent Draughon's UDTPA claim relies on his breach of contract claim, Draughon has failed to plead a UDTPA claim. As explained, Draughon has failed to plausibly allege breach of contract, and even if he had, that alone would not suffice as a UDTPA claim. Branch Banking & Tr. Co., 107 N.C. App. at 61–62, 418 S.E.2d at 700; see Broussard v. Meineke Discount Muffler Shops,

16

Inc., 155 F.3d 331, 347 (4th Cir. 1998); Deltacom, Inc. v. Budget Telecom, Inc., No. 5:10-CV-38-FL, 2011 WL 2036676, at *4 (E.D.N.C. May 22, 2011) (unpublished) ("A claim under the UDTPA . . . is precisely the kind of boilerplate tort claim that the Fourth Circuit has cautioned is inappropriate to allow to piggyback on a breach of contract action." (quotation omitted)).

To the extent Draughon's UDTPA claim relies on fraud or deception, the claim fails. As explained, Draughon has failed to plausibly allege a fraud claim. Likewise, Draughon has failed to plausibly allege that defendants' actions had "the tendency or capacity to deceive" or that they "created the likelihood of deception." Gress, 190 N.C. App. at 776, 661 S.E.2d at 281; see Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). After all, construing Draughon's allegations as true, defendants truthfully told Draughon they needed his assistance to prepare the bid, paid him $1,000 to help prepare the bid, and then hired him months later as an at-will employee. That Draughon failed to comply with Southern Tech's policies or live up to defendants' expectations for their employees does not make defendants' actions deceptive.

To the extent Draughon alleges defendants engaged in an unfair trade practice, the claim fails. Again, "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker, 362 N.C. at 72, 653 S.E.2d at 399 (quotation omitted). Draughon's allegations fall short of meeting this standard. Of course, Draughon alleges that defendants treated him poorly, including cutting off the heating and air conditioning in his office, giving him poor performance evaluations when no other employees were subject to performance evaluations, and not providing Draughon a computer with which to do his job. See Compl. ¶¶ 18–21. Taken as true, Draughon certainly has alleged that defendants' practices were unkind. But the UDTPA focuses on whether defendants' practices were "immoral, unethical, oppressive, unscrupulous, or substantially injurious to

17

consumers." Walker, 362 N.C. at 72, 653 S.E.2d at 399 (emphasis added and quotation omitted); see Marshall, 302 N.C. at 548, 276 S.E.2d at 403 ("Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace." (emphasis added)). Draughon has failed to plausibly allege such practices. Accordingly, the court dismisses Draughon's UDTPA claim.

## IV.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 1], DISMISSES plaintiff's complaint [D.E. 4-1] 3–10, and DENIES defendants' request for attorney's fees [D.E. 3] 6–8.

SO ORDERED. This 21 day of October, 2021.

                                                      JAMES C. DEVER III
                                                     United States District Judge